IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ISRAEL BENAVIDES | § | |
|     TDCJ-CID NO. 632708 | § | |
| v. | § | C.A. NO. C-12-039 |
| | § | |
| RICK THALER | § | |

## MEMORANDUM AND RECOMMENDATION TO
## GRANT RESPONDENT'S MOTION FOR SUMMARY JUDGMENT

Petitioner is a state prisoner currently incarcerated at the Garza East Unit in Beeville, Texas.  Proceeding pro se, he filed this habeas corpus petition pursuant to 28 U.S.C. § 2254, challenging the validity of his parole revocation.  (D.E. 1).  Pending is Respondent's motion for summary judgment.  (D.E. 13).  Petitioner has filed a motion for summary judgment in his favor. (D.E. 20).  In turn, Respondent has submitted a response brief opposing this motion for summary judgment.  (D.E. 24).  For the reasons stated herein, it is respectfully recommended that Respondent's motion for summary judgment be granted, Petitioner's motion be denied, and that this habeas petition be dismissed.

## I.  JURISDICTION

The Court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 2241, 2254, which provide that jurisdiction is proper where the inmate is confined, or where the conviction was obtained.  Wadsworth v. Johnson, 235 F.3d 959, 961-62 (5th Cir. 2000). Petitioner was convicted in Duval County, Texas.  (D.E. 1-1, at 2).  Jurisdiction is, therefore, proper in this Court.  28 U.S.C. § 124(b)(6).

## II.  BACKGROUND

On June 24, 1992, Petitioner was sentenced to thirty-five years imprisonment for delivery of a controlled substance.  (D.E. 1, at 2; D.E. 11-12, at 66-67).  He was also convicted for

possession of heroin and sentenced to fifteen years imprisonment on July 29, 2003.  (D.E. 2-1, at 3).  Petitioner was most recently released to parole on March 8, 2007.  (D.E. 11-12, at 43; D.E. 24-1, at 3, 17-18).

On June 19, 2009, Petitioner was arrested by the San Diego police department in Duval County, Texas and charged with engaging in organized criminal activity and burglary of a building.  (D.E. 11-12, at 43; D.E. 24-1, at 28, 54-55).  He was also processed at the Nueces County jail for a misdemeanor theft charge on June 21, 2009.  (D.E. 24-1, at 3, 7-8, 20, 27).  On the basis of the theft charge and three administrative violations for failure to pay fees, a pre-revocation warrant was issued and executed on June 23, 2009.  (D.E. 11-12, at 43; D.E. 24-1, at 4, 10, 19-20).  Following Petitioner's admission of guilt on August 6, 2009 for the theft charge as well as the administrative violations, (D.E. 24-1, at 4, 14-15), the Texas Board of Pardons and Paroles ("Parole Board") voted to continue supervision and assigned him to an Intermediate Sanction Facility on August 17, 2009.  (D.E. 20-1, at 1; D.E. 24-1, at 4).

Pursuant to a detainer, Petitioner was then transferred to Duval County on September 21, 2009 for further proceedings on the organized criminal activity and burglary charges.  (D.E. 24-1, at 4, 27).  The pre-revocation warrant issued on June 23, 2009 was subsequently withdrawn on February 1, 2010.  (D.E. 11-12, at 43; D.E. 24-1, at 4).  Another pre-revocation warrant was issued and executed on February 23, 2010 to reflect the pending charges in Duval County.  (D.E. 11-12, at 43; D.E. 24-1, at 4).  This warrant was republished and executed on April 26, 2010. (D.E. 11-12, at 43; D.E. 24-1, at 4).

Petitioner entered a guilty plea on the charge of engaging in organized criminal activity on January 18, 2011, and he was sentenced to five years incarceration.  (D.E. 11-12, at 43; D.E.

2

24-1, at 4, 41).  His burglary charge was dropped.  (D.E. 24-1, at 61-62).  Petitioner admitted to violating a condition of parole and waived his right to a revocation hearing on January 31, 2011. (D.E. 11-12, at 43; D.E. 24-1, at 5, 49-50).  The Parole Board then voted to revoke Petitioner's parole supervision on February 11, 2011.  (D.E. 11-12, at 43; D.E. 24-1, at 5, 45).

On December 27, 2010, Petitioner filed a state habeas application to challenge the failure to provide a preliminary parole revocation hearing.  (D.E. 11-12 at 8, 12).  The Texas Court of Criminal Appeals dismissed this application on June 22, 2011 as moot.  Id. at 2.  Petitioner subsequently instituted this action on February 6, 2012.  (D.E. 1).

### III.  PETITIONER'S ALLEGATIONS

Petitioner claims that his parole was improperly revoked because he was not given a preliminary revocation hearing in violation of Morrissey v. Brewer, 408 U.S. 471 (1972).  (D.E. 1, at 6).  He argues that because he was not given such a hearing, he was detained without probable cause and denied the right to confront any adverse witnesses against him.  (D.E. 1-1, at 2-3).

### IV.  DISCUSSION

Respondent contends that Petitioner's claims are without merit and should therefore be dismissed.  (D.E. 13, at 1).  Petitioner responds by insisting a parole revocation hearing was required.  (D.E. 20, at 1-4).

### A.    Federal Habeas Corpus Standard Of Review Pursuant To The AEDPA.

Federal habeas relief is available to a state prisoner only if he is being held in violation of the Constitution, laws, or treaties of the United States.  Boyd v. Scott, 45 F.3d 876, 881 (5th Cir. 1994) (per curiam) (citation omitted).  In addition, Rule 56 of the Federal Rules of Civil

3

Procedure generally applies to federal habeas corpus cases.  Clark v. Johnson, 202 F.3d 760, 764-65 (5th Cir. 2000) (citations omitted); see also Fed. R. Civ. P. 81(a)(4) ("These rules apply to proceedings for habeas corpus....").

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), federal courts are prohibited from granting habeas relief unless a petitioner demonstrates that the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law," or was "based on an unreasonable determination in light of the facts." 28 U.S.C. § 2254(d); see also Cullen v. Pinholster, __ U.S. __, 131 S. Ct. 1388, 1398 (2011) ("hold[ing] that review under 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits"); Riddle v. Cockrell, 288 F.3d 713, 716 (5th Cir. 2002) (discussing § 2254(d)).  Thus, "federal habeas relief is only merited where the state court decision is both incorrect *and* objectively unreasonable."  Morrow v. Dretke, 367 F.3d 309, 313 (5th Cir. 2004) (emphasis in original) (citing Williams v. Taylor, 529 U.S. 362, 411 (2000)). The AEDPA's provisions "ensure that state-court convictions are given effect to the extent possible under law."  Bell v. Cone, 535 U.S. 685, 693 (2002) (citing Williams, 529 U.S. at 403-04).

The Supreme Court has concluded that the "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have independent meanings.  Bell, 535 U.S. at 694 (citing Williams, 529 U.S. at 404-05).  The Bell Court elaborated on the distinctions between "contrary to" and an "unreasonable application:"

> A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts.  The court

> may grant relief under the "unreasonable application" clause if the
> state court correctly identifies the governing legal principle from
> our decisions but unreasonably applies it to the facts of the
> particular case.  The focus of the latter inquiry is on whether the
> state court's application of clearly established federal law is
> objectively unreasonable, and we stressed in *Williams* that an
> unreasonable application is different from an incorrect one.

Id. (internal citations omitted).

The Fifth Circuit has explained that the "contrary to" clause applies where a "state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts."  Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (citation omitted). The Fifth Circuit has further determined that "§ 2254(d) permits a federal habeas court 'to review only a state court's "decision" and not the written opinion explaining that decision.'"  St. Aubin v. Quarterman, 470 F.3d 1096, 1100 (5th Cir. 2006) (citing Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002) (en banc) (per curiam)); accord Anderson v. Johnson, 338 F.3d 382, 390 (5th Cir. 2003) (citing Neal, 286 F.3d at 246).  The state court's "ultimate decision" is to be tested for reasonableness, "not every jot of its reasoning."  Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir. 2001).  Furthermore, a state court need not cite, or "even be aware of [Supreme Court] precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'"  Mitchell v. Esparza, 540 U.S. 12, 16 (2003) (per curiam) (quoting Early v. Packer, 537 U.S. 3, 8 (2002)); see also Harrington v. Richter, __ U.S. __, 131 S. Ct. 770, 785 (2011) (reaffirming that "§ 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits'").

Absent a direct conflict with Supreme Court authority, habeas relief is available only if a

state court decision is objectively unreasonable.  Montoya v. Johnson, 226 F.3d 399, 404 (5th

Cir. 2000).  Indeed, AEDPA's deferential standard limits the federal court role in the review of

state convictions:

> [Section 2254(d)] preserves authority to issue the writ in cases
> where there is no possibility fairminded jurists could disagree that
> the state court's decision conflicts with this Court's precedents.  It
> goes no farther.  Section 2254(d) reflects the view that habeas
> corpus is a "guard against extreme malfunction in the state
> criminal justice systems," not a substitute for ordinary error
> correction through appeal....  As a condition for obtaining habeas
> corpus from a federal court, a state prisoner must show that the
> state court's ruling on the claim being presented in federal court
> was so lacking in justification that there was an error well
> understood and comprehended in existing law beyond any
> possibility for fairminded disagreement.

Harrington, 131 S. Ct. at 786-87 (citation omitted).  The Fifth Circuit has further explained that a

federal district court "must reverse when [it] conclude[s] that the state court decision applies the

correct legal rule to a given set of facts in a manner that is so patently incorrect as to be

'unreasonable.'"  Gardner v. Johnson, 247 F.3d 551, 560 (5th Cir. 2001).  As with the "contrary

to" test, the focus of the "unreasonable application" test is "on the ultimate legal conclusion that

the state court reached and not on whether the state court considered and discussed every angle

of evidence."  Neal, 286 F.3d at 246.

Finally, "[t]he AEDPA requires that [the Court] presume correct the state court's findings

of fact unless the petitioner 'rebut[s] the presumption of correctness by clear and convincing

evidence.'"  Morrow, 367 F.3d at 315 (quoting 28 U.S.C. § 2254(e)(1)).  The presumption of

correctness is also accorded to adjudications made during state post-conviction proceedings.  Id.

The burden to rebut the presumption of correctness remains on the petitioner even if the state

"hearing was a 'paper' hearing and may not have been full or fair."  Id. (citing Valdez v.

6

<u>Cockrell</u>, 274 F.3d 941, 950-51 (5th Cir. 2001)).  In some circumstances, findings of fact may be implied from conclusions of law.  <u>See</u> <u>Valdez</u>, 274 F.3d at 948 n.11 ("The presumption of correctness not only applies to explicit findings of fact, but it also applies to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact.") (citations omitted); <u>Goodwin v. Johnson</u>, 132 F.3d 162, 183-84 (5th Cir. 1997).

**B.     Petitioner's Arrest And Conviction For An Offense Rendered A Preliminary Parole Revocation Hearing Unnecessary.**

A prisoner may be released on parole subject to a number of conditions, and violation of these parole conditions may provide the grounds for re-incarceration.  When a parolee is detained on the suspicion that he has violated a condition of his release, due process requires that a preliminary hearing be held "at or reasonably near the place of the alleged parole violation or arrest ... as promptly as convenient after arrest" in order to "determine whether there is probable cause or reasonable ground to believe that the arrested parolee has committed acts that would constitute a violation of parole conditions."  <u>Morrissey</u>, 408 U.S. at 485 (citations omitted).  In addition, the parole authority must provide an opportunity for a hearing prior to the final revocation of parole to determine whether revocation is warranted.  <u>Id.</u> at 487-88.  The Supreme Court explained that this preliminary revocation hearing is necessary to promote society's interest in accurately determining whether a parole violation occurred as well as to safeguard the parolee's liberty interest.  <u>See</u> <u>id.</u> at 482-84; <u>see</u> <u>also</u> <u>Gagnon v. Scarpelli</u>, 411 U.S. 778, 782 (1973) (extending the use of preliminary revocation hearings to the probation context because both parole and probation revocation "result in a loss of liberty").

The record reflects that Petitioner was arrested and detained on charges of misdemeanor theft as well as felony charges of engaging in organized criminal activity and burglary.

7

Respondent asserts that because Petitioner was arrested for committing a new crime and not taken into custody for an outstanding parole warrant, a preliminary hearing was not necessary. (D.E. 13, at 11; D.E. 24, at 10-12).  He also relies upon the Texas Government Code, which provides that a parolee does not need to be given a preliminary hearing if he "has been adjudicated guilty of or has pleaded guilty or nolo contendere to an offense committed after release...."  Tex. Gov't Code § 508.2811(2)(B).  Nevertheless, he provides no citations to controlling decisional law supporting the proposition that a parolee who has been placed in custody pending prosecution for other criminal charges has no <u>constitutional</u> due process right to a preliminary revocation hearing.

Despite Respondent's failure to support his legal argument with case law, there are some cases that suggest a parolee is not entitled to a preliminary hearing when he has already been detained on other criminal charges.  In <u>United States v. Tucker</u>, the Fifth Circuit held that a prisoner who was already serving a sentence for a prior firearm conviction did not need to be given a preliminary hearing when the government sought to revoke parole because of his role in alleged lottery activities.  524 F.2d 77, 78 (1975) (per curiam).  The court distinguished <u>Morrissey</u> and <u>Gagnon</u> by noting that "in the typical case of revocation of probation or parole, the probationer or parolee has been released from incarceration and is at liberty when the revocation proceeding begins.  Accordingly, revocation of his probation or parole does deprive him immediately of his liberty."  <u>Id.</u>  On the other hand, the court explained that the commencement of revocation proceedings while a parolee is already incarcerated for another conviction does not engender the same "immediate loss of freedom which would require the immediate probable cause hearing which the *Morrissey* and *Gagnon* Courts deemed necessary."

Id.  Because the complainant was incarcerated pursuant to a final conviction at the time of the

attempted revocation, the Tucker court held that a preliminary hearing was unnecessary.  Id.

Similar to the parolee in Tucker, Petitioner was not initially taken into custody as a

parole violator on an outstanding pre-revocation warrant.  However, the record reflects that a

pre-revocation warrant was later issued and executed before Petitioner was convicted on his new

criminal charges.  (D.E. 24-1, at 4).  The Supreme Court has "established [that] execution of the

[parole] warrant and custody under that warrant as the operative event triggering any loss of

liberty attendant upon parole revocation."  Moody v. Daggett, 429 U.S. 78, 87 (1976).

Notwithstanding the execution of a pre-revocation warrant, Petitioner has failed to establish that

he was ever in "custody under that warrant" such that he was deprived of his liberty.  Id.  Given

that Petitioner was already in jail for various misdemeanor and felony charges, the execution of a

revocation warrant did not act to "deprive him immediately of his liberty."  Tucker, 524 F.2d at

78.  Such a position would be consistent with prior Fifth Circuit precedent recognizing that a

preliminary hearing is required only when a parolee's freedom is actually curtailed by virtue of

an executed parole warrant.  See Deveny v. United States Bd. of Parole, 565 F.2d 875, 878 (5th

Cir. 1978) (per curiam) (explaining that Moody did not require a hearing "before the parolee is

taken into custody as a parole violator" and holding that "[t]he loss of liberty as a parole violator

does not occur until the parolee is taken into custody under the [parole violator] warrant"); Cook

v. United States Attorney Gen., 488 F.2d 667, 671 (5th Cir. 1973) (a parole violator warrant is

"executed" within the meaning of federal parole law when the parolee is returned to custody by

virtue of the parole warrant as opposed to apprehension under a new intervening sentence).

Because "there [was] no immediate loss of freedom which would require the immediate

9

probable cause hearing," the reasoning in <u>Tucker</u> strongly suggests that a preliminary revocation hearing was unnecessary.  524 F.2d at 78.  This conclusion finds support in the decisional laws of other federal circuits, which recognize that a parolee is not entitled to a preliminary <u>Morrissey</u> hearing while he is already in custody for other pending criminal charges at the time of the revocation proceedings.  <u>See</u>, <u>e.g.</u>, <u>United States v. Diaz-Burgos</u>, 601 F.2d 983, 984-85 (9th Cir. 1979) (per curiam) (holding that a preliminary probable cause hearing was not required by <u>Gagnon</u> "because [the probationer] was already in custody at the time of the revocation proceeding by reason of a second re-entry prosecution") (citations omitted); <u>see</u> <u>also</u> <u>United States v. Pardue</u>, 363 F.3d 695, 697-98 (8th Cir. 2004) (petitioner who was incarcerated on pending state charges was not entitled to a probable cause hearing because he was not suffering from an undue federal incarceration) (citing <u>United States v. Sackinger</u>, 704 F.2d 29, 30 (2d Cir. 1983)).  Accordingly, it is respectfully recommended that this claim be dismissed.

**C.    The Failure To Provide A Preliminary Revocation Hearing Was Harmless.**

In the alternative, Respondent argues that any error in failing to provide a preliminary revocation hearing would have been harmless because Petitioner waived his opportunity to have a revocation hearing.  (D.E. 24, at 14).  As a result, he submits that Petitioner's current incarceration is the result of a new conviction and does not result from the lack of a preliminary hearing.  <u>Id.</u>

Habeas relief pursuant to § 2254 for constitutional error is generally only appropriate when that error had a "substantial and injurious effect."  <u>Fry v. Pliler</u>, 551 U.S. 112, 121 (2007).  The Fifth Circuit has previously utilized a harmless error analysis when reviewing a challenge to the validity of a parole revocation proceeding.  <u>See</u> <u>Williams v. Quarterman</u>, 307 F. App'x 790,

793-94 (5th Cir. 2009) (per curiam) (unpublished) (citing <u>Fry</u>); <u>accord</u> <u>Wilson v. Thaler</u>, No. H-11-365, 2012 WL 202079, at *4 (S.D. Tex. Jan. 20, 2012) (unpublished) (citing <u>Fry</u>, 551 U.S. at 121-22); <u>Norwood v. Thaler</u>, No. 7:07-CV-66, 2010 WL 3808981, at *4 (N.D. Tex. Sept. 28, 2010) (unpublished) (citing <u>Fry</u> and <u>Brecht v. Abrahamson</u>, 507 U.S. 619 (1993)).  Moreover, other federal circuit courts have characterized a collateral attack on a parole revocation proceeding as a claim that is properly brought in a § 2254 petition and subject to the limitations on legal relief inherent in such actions.  <u>See</u> <u>Cook v. New York State Div. of Parole</u>, 321 F.3d 274, 278-79 (2d Cir. 2003) (collecting cases).  Therefore, Petitioner's claim is subject to <u>Fry</u>'s harmless error analysis.

Respondent references <u>Collins v. Turner</u>, which held that the provision of a final revocation hearing that allowed the petitioner to present evidence with the assistance of counsel effectively remedied any constitutional defect stemming from the failure to conduct a preliminary revocation hearing.  599 F.2d 657, 658 (5th Cir. 1979) (per curiam).  As the Fifth Circuit held, "the denial of [the petitioner's] preliminary hearing right no longer has any relation to his incarceration....  To order [his] release from custody at this time would be to grant an extreme remedy for a deprivation from which [he] is no longer suffering."  <u>Id.</u>  Other cases support this proposition.  <u>See</u>, <u>e.g.</u>, <u>Barton v. Malley</u>, 626 F.2d 151, 159 (10th Cir. 1980) ("[Petitioner]'s present incarceration stems from a decision made after a final revocation hearing, adequate in all respects.  Any denial of his right to a preliminary revocation hearing no longer bears on his incarceration.") (citation omitted); <u>Norwood</u>, 2010 WL 3808981, at *4 ("An inmate is not entitled to relief when the State has provided him with a full evidentiary hearing before revocation of his parole, even though he was not given a preliminary hearing, because his

11

incarceration is no longer related to the lack of a preliminary hearing.") (citing <u>Collins</u>).

While Petitioner did not receive a full revocation hearing because he waived that opportunity, (D.E. 24-1, at 5), he cannot claim that the Parole Board's failure to provide him with a preliminary revocation hearing bears any relation to his present confinement.  Rather, it is his admission of guilt to the Parole Board that constitutes the reason his parole was revoked.  It makes little sense to undo the revocation of parole due to the lack of a preliminary hearing when Petitioner ceased to contest the proceedings and willingly supplied all the justifications necessary for the Parole Board to render its decision.

Although the Fifth Circuit recognized that admission of a parole violation does not necessarily cleanse the proceedings of reversible error, Petitioner has not alleged how the lack of a preliminary hearing resulted in legally cognizable prejudice.  Indeed, he pled true to the allegations instead of challenging them at a revocation hearing.  In <u>United States v. Williams</u>, the Fifth Circuit explained that "in revocation cases, even if the prisoner admits the violation, he may be prejudiced if delay has impaired his ability to present evidence of mitigating circumstances that might affect the decision to incarcerate him and the conditions of incarceration."  558 F.2d 224, 227 (5th Cir. 1977); <u>see also</u> <u>Koetting v. Thompson</u>, 995 F.2d 37, 39-40 (5th Cir. 1993) (per curiam) (allegations that authorities were interfering in the petitioner's ability to defend against parole revocation proceedings state a claim for habeas relief) (citing <u>Williams</u>).  Petitioner asserts that he was being detained on the basis of inadmissible testimony. (D.E. 1-1, at 4; D.E. 20, at 3).  He insists that "things would have been different with a preliminary hearing" because he could have attempted to confront his accusers.  (D.E. 20, at 3). Inasmuch as he has conceded violating parole, his attempts to show that he did not violate parole

are irrelevant to the prejudice inquiry.

Furthermore, Williams did not address a situation in which a parolee decides to waive a full revocation hearing. Accordingly, it is questionable whether the Parole Board could have been persuaded to take a different course in the absence of such a hearing. Given that Petitioner has not shown that he could have presented mitigating circumstances to the Parole Board that would have altered their decision, it is respectfully recommended that any constitutional error resulting from the failure to provide a preliminary hearing did not have "substantial and injurious effect" on the outcome of the revocation proceeding and his present incarceration. Fry, 551 U.S. at 121.

## V.  CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the Fifth Circuit from a final order in a habeas corpus proceeding "[u]nless a circuit justice or judge issues a certificate of appealability."  28 U.S.C. § 2253(c)(1)(A).  Although Petitioner has not yet filed a notice of appeal, it is respectfully recommended that this Court nonetheless address whether he would be entitled to a certificate of appealability.  A district court ruling on a petitioner's relief may sua sponte rule on a certificate of appealability because it "is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court.  Further briefing and argument on the very issues the court has just ruled on would be repetitious." Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000) (per curiam).

The statute establishes that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "The COA determination under § 2253(c) requires an overview of the claims in

the habeas petition and a general assessment of their merits."  Miller-El v. Cockrell, 537 U.S.
322, 336 (2003).  To warrant a grant of the certificate as to claims denied on their merits, "[t]he
petitioner must demonstrate that reasonable jurists would find the district court's assessment of
the constitutional claims debatable or wrong."  Slack v. McDaniel, 529 U.S. 473, 484 (2000).
This standard requires a § 2254 petitioner to demonstrate that "reasonable jurists could debate
whether ... the [petition] should have been resolved in a different manner or that the issues
presented ... deserve[d] encouragement to proceed further."  United States v. Jones, 287 F.3d
325, 329 (5th Cir. 2002) (citation omitted).

As to claims district courts reject solely on procedural grounds, a petitioner must show
both "that jurists of reason would find it debatable whether the petition states a valid claim of the
denial of a constitutional right and that jurists of reason would find it debatable whether the
district court was correct in its procedural ruling."  Slack, 529 U.S. at 484 (emphasis added).

It is respectfully recommended that reasonable jurists could not debate this denial on
substantive or procedural grounds nor find that the issues presented are adequate to proceed.
Miller-El, 537 U.S. at 327 (citing Slack, 529 U.S. at 484).  Accordingly, it is respectfully
recommended that the Court find that Petitioner is not entitled to a certificate of appealability.

14

## VI.  RECOMMENDATION

Based on the foregoing reasons, it is respectfully recommended that Respondent's motion for summary judgment, (D.E. 13), be granted, that Petitioner's motion for summary judgment, (D.E. 20), be denied, and that this habeas petition, (D.E. 1), be dismissed.  Additionally, it is respectfully recommended that Petitioner be denied a certificate of appealability.

Respectfully submitted this 18th day of July 2012.

BRIAN  L. OWSLEY
UNITED STATES MAGISTRATE JUDGE

## <u>NOTICE TO PARTIES</u>

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to 28 U.S.C. § 636(b)(1); Rule 72(b) of the Federal Rules of Civil Procedure; Rule 8(b) of the Rules Governing § 2254 Cases; and Article IV, General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415 (5th Cir. 1996) (en banc).